**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MARVIN BLUNT-BEY,**
          Petitioner,

v.                                                                                   Civil Action No. 5:13cv94
                                                                                    (Judge Stamp)

**R.A. PERDUE, Warden,**
          Respondent.

## REPORT AND RECOMMENDATION

On July 29, 2013, the *pro se* petitioner, Marvin Blunt, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The petitioner is an inmate at the Gilmer Federal Correctional Institution in Glenville, West Virginia. In the petition, the petitioner challenges the U.S. Parole Commission's decision to deny him parole. The petitioner paid the $5.00 filing fee on July 30, 2013. On July 31, 2013, the undersigned conducted a preliminary review of this matter and determined that summary dismissal of the same was not warranted. Accordingly, an Order to Show Cause was entered. On August 16, 2013, the respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. On August 19, 2013, Roseboro Notice was issued, and on September 9, 2013 the petitioner filed a response which he styled as a "Motion to Oppose Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment."

This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 2, is ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

---

[1] The fact related to the petitioner's conviction, sentence and first parole hearing are taken from the Report and Recommendation prepared by Magistrate Judge David J. Joel in Civil

On November 28, 1990, the Superior Court sentenced the petitioner to consecutive 15 years to life prison terms for two counts of armed robbery, a concurrent 15 year to life term for burglary II while armed, and a consecutive 5-year prison term for bail jumping. (Doc. 9-1, pp. 2-3). On September 18, 1990, the petitioner was sentenced by the Superior Court to a concurrent 3 to 9 year prison term for attempted distribution of cocaine. (Doc. 9-1, p. 4). The petitioner's initial parole eligibility date was October 16, 2010. (Doc. 9-1, p. 8).

A DC Board of Parole Guidelines Prehearing Assessment was prepared on January 26, 2010. The report recounts the petitioner's offenses as follows:

> On 9-8-88, the victim was approached by two mail suspects. One of them produced a knife and forced his way into her residence. Once inside, they removed property valued at $3255. The victim was held for 20 minutes before the suspects departed. The victim reviewed a photo spread on 9-8-8 and picked out the subject, 80% sure. A line-up conducted on 10-28-88 and she positively identified the subject as the assailant who forced his way into her home at knife point. Subject pled not guilty.
>
> On 10-6-88, the victim was walking on 400 block of C Street and the subject exited from a basement stairwell. He stopped and forced her to back up against a parked car. He drew an icepick and stabbed her through the arm and breast. She fell between the parked cars. He snatched her purse and returned to the basement apartment. She began screaming and he fled. A passerby provided assistance. On 10-20-1988, the victim positively identified the subject as her assailant. He was arressted on 10-10-88 He pled not guilty.
>
> On 5-5-89, he failed to appear in court for a pre-trial status hearing.
>
> On 11-28-1990, subject was convicted by a jury of 2 counts of Armed Robbery, Burglary II and Bail Reform Act. He was sentenced to 30 years to Life with 1-5 years consecutive in docket number F13465-88 and F3895-90.
>
> On 3-20-90, subject engaged in distribution of cocaine, There is not a PSI for this docket, F38 63-90. (Requested from the BOP). On 12-18-90, he was sentenced to 3-9 years, concurrent.

---

Action No. 2:10cv73, which was a § 2241 petition filed by the petitioner regarding denial of parole in 2010. The documents referenced are to the pleadings in that earlier case.

The pre-hearing assessment also assigned the petitioner a Total Salient Factor Score of 5[2], Degree of Risk Points of 2, Type of Risk Points of 1, Negative Institutional Behavior Points of 0, Program Achievements Points of -1, for an Initial Point Assignment Grid Score of 2. (Doc. 9-1, pp. 11-12). Accordingly, the pre-hearing assessment determined that the petitioner, "now age 42, is appearing for his initial hearing on a 31 year to Life term imposed in 1990 for 2 counts of Armed Robbery, BRA, and Distribution of Cocaine. His parole eligibility date is 10-16-2010. His grid score is 2 which suggests parole be granted at the initial hearing with the highest level of supervision. [However] [a] record parole decision is not recommended due to the lack of complete information about the victims' injuries and the cocaine distribution conviction. Additionally, subject pled not guilty to these crimes. An in-person hearing is necessary to determine his risk to the community." (Doc. 9-1 p. 12).

The petitioner's initial parole hearing was conducted on February 18, 2010, via video conferencing. During the hearing, the petitioner was asked if he had any misconduct while he was in the DC Department of Corrections or in the contract facility in Ohio , and he replied that he was infraction free. However, the hearing examiner obtained the petitioner's DC file and determined that there was one infraction that occurred in 1991, while the petitioner was at Lorton.[3] According

---

[2] The salient factor score is determined by the following factors: (1) the number of prior convictions/adjudications; (2) the number of prior commitments of more than 30 days; (3) the inmate's age at commencement of the current offense/prior commitment of more than 30 days; (4) the length of recent commitment free period; (5) whether the inmate was on probation/parole/confinement/escape status at the time of the current offense; and (6) whether the inmate was 41 years of age or more at the commencement of the current offense.

[3] The full name of that facility was the D.C. Correctional Facility at Lorton. The Balanced Budget Act of 1997 required D.C. officials to begin transferring prisoners as soon as possible and to close Lorton within four years, The prison closed in 2001, and D.C. inmates are now housed in BOP facilities.

to the hearing summary, on July 31, 1991, staff witnessed the petitioner and several other inmates attacking another inmate in the tier. The petitioner appeared before the Adjustment Board on that same date and denied that he committed the prohibited act. The Board found him guilty and imposed 14 days of administrative segregation, 30 days suspension of canteen, telephone and visits. When questioned by the parole examiner at the hearing, the petitioner denied the incident and stated that he had no recollection of it. However, he did conform that his DC-DC-Number was listed on the report and that he was housed in Lorton at the time of the incident. The parole examiner found that the petitioner had violated the rules of the institution as indicated by the violation. (Doc. 9-1, p. 16). Accordingly, the parole examiner assigned the petitioner Negative Institutional Behavior Points at Initial Consideration of +1, bringing his Grid Score to a 3. The parole examiner found that this Grid Score indicated that parole be denied at the Initial Hearing. Moreover, although the rehearing guidelines indicated that the petitioner's next parole hearing should be scheduled within 12 months, the parole examiner found that a departure from the guidelines was warranted. In making this determination, the parole examiner noted as follows:

> A departure from these guidelines is found warranted because the Commission finds that you are a more serious parole risk than your point score and there is a reasonable probability that you would not obey the law if released and your release would endanger public safety. Specifically, you stand convicted of four separate crimes that occurred over a 2 year span. Two of the crimes were for Armed Robbery where the victims were assaulted. In one of the assaults you held the victim in her apartment at knifepoint against her will before leaving with her property. In the second instance you attacked a woman on the street and stabbed her with an ice pick twice before snatching her purse and running away. In both of these incidents you exhibited unusual cruelty to these victims. Additionally, you became a fugitive from the Court System in May of 1989 and continued to engage in criminal activity as exhibited by your 3/30/1990 arrest and subsequent conviction for Distribution of Cocaine. Your ongoing criminal behavior during the course of a 2 year span indicates that you are a more serious risk if released on parole at this

4

time.

(D0c. 9-1, p. 18).

Accordingly, the parole examiner recommended that parole be denied. In addition, she recommended that the petitioner be continued for a rehearing in February, 2013. The Commission accepted the recommendation of the hearing examiner and, by notice of action dated March 20, 2010, informed the petitioner that he was denied parole and continued to a rehearing in February 2013. (Doc. 9-1, p. 20).

On January 14, 2013, a hearing examiner of the U.S. Parole Commission conducted a D.C. Board of Parole Rehearing.[4] The hearing examiner evaluated the case pursuant to the 1987 guidelines of the former District of Columbia Board of Parole. Although the petitioner's grid score indicated that he should be granted parole, the hearing examiner recommended that parole be denied and a rehearing be schedule in twelve (12) months.(Doc. 10-1, pp. 2-4). Upon review of this decision, the executive reviewer, a reviewing examiner and two Commissioners agreed with the parole denial but voted to set the petitioner's rehearing in 24 months rather than the 12 months recommended by the hearing examiner.(Doc. 10-1, pp. 4-6). In February 25, 2013, the Commission issued a Notice of Action denying the petitioner parole and continuing him to rehearing in January 2015. (Doc. 10-1, p.7).

## II. CLAIMS OF PETITION

Although the petitioner has attached a twenty-six page typed memorandum to his form petition, it is difficult to ascertain his precise argument. Giving a liberal construction, however, it

---

[4]This is the parole hearing which is the subject of the instant petition, and all document citations that follow refer to materials in 5:13cv94.

would appear that he is alleging that the parole commission violated the constitutional ban against *ex post facto* laws by: (1) misapplying the 1987 Board guidelines by adding a point for negative institutional behavior at his 2010 initial parole hearing; (2) using the "nature of the offense" in departing from the 1987 guidelines; and (3) double counting the same factors in its parole decision making.

### III. RESPONSE

In support of his Motion to Dismiss or, in the alternative Motion for summary judgment, the respondent argues that this claims presented by the petitioner in the instant petition are the same claims that he brought in his previous habeas following the denial of parole at his first hearing. The respondent notes that the Court denied those claims, and the Fourth Circuit summarily dismissed the petitioner's appeal of that denial. Accordingly, the respondent argues that the current petition should be dismissed as a successive petition or as an abuse of the writ.

### IV. REPLY

In his reply, the petitioner maintains that he has presented proper claims supported by genuine material facts that United States Parole Commission continues to violate his procedural due process rights by not employing the appropriate regulations that it agreed to implement according to its "remedial plan."

### V. STANDARD OF REVIEW

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

7

the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most

8

favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986.

## V.  ANALYSIS

### Abuse of Writ

The successive petition/abuse-of-writ doctrine is codified, in large part, at 28 U.S.C. § 2244. The doctrine may bar the claims of a habeas petitioner who repeatedly brings the same issues before a federal court for resolution. Prior to its amendment in 1996, § 2244(a) was applied to bar successive habeas petitions regarding challenges to actions of the Parole Commission. See, e.g., Glumb v. Honstead, 891 F.2d 872, 873 (11th Cir. 1990); Poyner v. U.S. Parole Commission, 878 F.2d 275, 277 (9th Cir. 1989); Sacco v. U.S. Parole Commission, 639 F.2d 441, 442-43 (8th Cir. 1981).

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), § 2244(a) now provides:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided for in section 2255.

The exception in § 2255 does not apply to this case because, in challenging the Parole Commission's actions, the petitioner is challenging the execution of his sentences; he is not challenging the imposition of the sentences. Therefore, because the petitioner's arguments with respect to the denial of parole in 2013, are essentially the same arguments he made with respect to the denial of parole following his 2010 hearing, it would appear that the Court could dismiss this case as a successive petition or as an abuse of the writ. However, to the extent the Court wishes to

address the merits of the petition, it should be dismissed.

**D.C. Parole**

In 1997, Congress overhauled the District of Columbia's government, including the parole system through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). Effective August 5, 1998, the D.C. Board was abolished, and its jurisdiction over parole decisions for D.C.Code violators was transferred to the USPC. Upon assuming the D.C. Board's jurisdiction, the USPC began a process of revising the regulations for determining D.C.Code offenders' suitability for parole. See Sellmon, 551 F.Supp.2d at 72-73 (discussing revisions). The revisions were codified at 28 C.F.R. §§ 2.70-2.107 in 2000 (2000 Regulations). The 2000 Regulations specify that they are applicable to a D.C.Code offender, such as the petitioner, whose first parole hearing would occur after August 5, 1998. See 28 C.F.R. § 2.80(a)(5). The changes incorporated in the 2000 Regulations are broad and arguably could pose a significant risk of a longer period of incarceration than under the earlier 1987 Regulations.

**A. 1987 Regulations**

"The 1987 Regulations were adopted to 'structure the exercise of the paroling authority's discretion' and to promote 'increased consistency in parole release decisions and enhanced accountability of the Board' by making '**explicit** those factors that will be considered in each case."

Sellmon at 554, *quoting* Report on the Development of the Paroling Policy Guidelines for the District of Columbia Board of Parole (emphasis in original). Under the 1987 Regulations, after serving his minimum sentence, a D.C.Code offender became eligible for parole.[5] The D.C. Parole

---

[5]"[T]he justice or judge of the court imposing [a felony' sentence shall sentence the person for a maximum period not exceeding the maximum fixed by law, and for a minimum

10

Board would then determine the prisoner's suitability for parole by calculating a total point score (TPS) which ranges from 1 to 5. Based on the TPS score, the 1987 regulations lead to one of two outcomes: "parole shall be granted" or "parole shall be denied. D.C. Mun. Regs. Tit. 28, §§ 204.19-.22 (1987) (repealed 2000). At an initial parole hearing, a prisoner with 0, 1, or 2 points "shall be" granted parole with varying degrees of supervision. Id. at § 204.19. For a prisoner with 3, 4, or 5 points, "[p]arole shall be denied at initial hearing and hearing rescheduled." Id. However, regardless of whether the 1987 Regulations indicated that a prisoner's parole should be granted or denied, the D.C. Board retained the discretion to reach a different decision if merited by "unusual circumstances." Id. at § 204.22.

### B. The 2000 Regulations

Between 1998 and 2000, the USPC drafted new parole regulations and guidelines that it applied to any offender who received an initial parole hearing after August 5, 1998. See Sellmon 551 F.Supp.2d at 73. The USPC justified its revisions by explaining that its research demonstrated that "[t]he point score system used by the D.C. Board of Parole ha[d] resulted in a high rate of upward departures from the guidelines based upon factors that should be included in the guidelines...." 63 Fed.Reg. 17771, 17772 (Apr. 10, 1998).

The 2000 Regulations establish the process the USPC follows to calculate the number of months a prisoner should serve in custody before he is suitable for parole. This multi-step process results in what is called the Total Guidelines Range, which is the "amount of time [a prisoner] may expect to serve with continued good conduct and ordinary program achievement." 65 Fed. Reg.

---

period not exceeding one-third of the maximum sentence imposed, and any person so convicted and sentenced may be released on parole...at any time after having served the minimum sentence. " D.C. Code § 24-403 (2001).

0663, 70664 (November 27, 2000). Until the prisoner has served a period of time equal to the bottom of his total guideline range, he is presumed to be unsuitable for parole. See 28 C.F.R. §§ 2.80(h), (I), & (f). Like the 1987 Regulations, the 2000 Regulations permit the USPC to deny parole to a prisoner who is presumptively eligible under "unusual circumstances." The 2000 Regulations provide examples of "unusual circumstances" but do not limit the discretion of the USPC to depart on any basis that it classified as "unusual" except that it cannot have been "fully taken into account in the guidelines." 28 C.F.R. § 2.80(n).

In this particular case, it is clear that the crimes for which the petitioner is incarcerated were committed prior to the adoption of the 2000 Regulations. However, his first parole hearing was conducted on February 18, 2010. Therefore, had the USPC applied the 2000 regulations, an *ex post facto* violation might have occurred. However, it is clear that the USPC applied the 1987 regulations to the petitioner's 2010 and 2013 parole hearings.

The petitioner's Grid Score at the 2013 hearing was a 2, which indicated that parole be granted with the Highest Level of Supervision. (Doc. 10-1, p. 3). However, the hearing examiner noted that "the subject is still likely to re-offend if released at this time. The court imposed a 30 year to Life sentence for this offense. Release prior to completion of the minimum sentence does not appear appropriate at this time even though the subject has programmed and maintained a stable adjustment." Id. Accordingly, the hearing examiner recommended that parole be denied, and the matter be continued for rehearing in January of 2014, or after an additional 12 months. The Commission, in its Notice of Action, ordered that parole be denied and continued the matter for rehearing in January 2015 after the service of 24 months from the last hearing. In reaching this decision, the Commission stated:

> Your Grid Score at your last hearing was 3 point(s). You continue to be scored under the 1987 guidelines of the D.C. Board of parole.
>
> Under the guidelines for D.C. Code offenders, your Total Point Score includes -1 point for ordinary program achievement since your last hearing.
>
> With adjustments reflecting your institutional record since your last hearing, your current Grid Score is 2. You continue to be scored under the 1987 guidelines of the D.C. Board of Parole. Those guidelines indicate that parole should be granted at this time. After consideration of all factors and information presented, a departure from the guidelines at this consideration is warranted because you are more serious risk than indicated by your point score in that the instant offense involved unusual cruelty to the victim. Additionally, you were convicted of four separate crimes over a two year period. The reasons in the Notice of Action dated March 20, 2012 [sic] are still appropriate. The Commission recommends that you participate in and complete additional programs to address your offense behavior to lessen your risk to the community.
>
> The guidelines for the time to rehearing indicate that your next hearing should be scheduled within 12 months. A departure from those guidelines is found warranted for the same reasons provided above for denying parole.
>
> (Doc. 10-1, p.7).

The D.C. Board was given vast discretion to depart from the parole decision suggested by a strict application of the regulations. See 1987 Regs. § 204.22; see also Ellis v. District of Columbia, 84 F.3d 1413, 1418-20 (D.C. Cir. 1986) (holding that the 1987 Regulations do not create a liberty interest for prisoners who are found to be presumptively suitable for parole). "The USPC would have no less discretion when applying the 1987 Regulations; it could faithfully apply the 1987 Regulations to [the] [p]etitioner's parole request and exercise its discretion to deny parole." Taylor v. Craig, No. 05-781, 2009 WL 900048, p. 13 (S.D.W.V. March 24, 2009). Accordingly, "the calculations done under the regulations are intended to 'enable the Board to **exercise its discretion** when, and only when, release is not incompatible with the safety of the community.' §04.3" Ellis,

13

84 F.3d at 1418 (emphasis in the original). Furthermore, "the regulations explicitly authorize the Board [and by succession, the USPC] to disregard the numerical guidelines simply by referring to 'the specific aggravating or mitigating factors as stated in Appendices 2-1 and 2-1.'§ 204.1" Id. Among the factors listed in the Appendices are "Other" and "Other change in circumstances." App. 2-1, at 2-35; App. 2-2, at 2-38. "Under § 204.22 of the regulations, if the Board [and by succession, the USPC] wished to disregard the results of the scoring system it merely had to say so in writing." McRae v. Hyman, 667 A.2d 1356, 1361 (D.C. 1995).

D.C. Code § 24-404, formerly § 24-204 provides as follows:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

The Commission's stated reason for departing from the guidelines and continuing the date for his rehearing for a three-year period is consistent with this statute and the Commission's rules. 28 C.F.R. § 2.80(o) provides that the Commission will depart from the Board's guidelines if it concludes that the petitioner's release would pose a serious risk to the public safety. Clearly, the Commission's stated reasons for departing from the guidelines provide a rational basis for their action.

Parole actions are subject to review only to determine whether the Parole Commission violated the Constitution, its enabling statute, or parole regulations. Garcia v. Neagle, 660 F.2d 983 (4th Cir. 1981). For the reasons stated above, the decision to deny the petitioner parole and continue him for rehearing in two years does not constitute any such violation.

14

## VI. RECOMMENDATION.

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 9) be **GRANTED**, the petitioner's Motion to Oppose Respondent's Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. 13) be **DENIED**, the petitioner's §2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

DATED: October 4, 2013.

/s/ James E. Seibert  
JAMES E. SEIBERT  
UNITED STATES MAGISTRATE JUDGE